IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT WILLIAMS,   No C 04-0966 VRW

    Petitioner,   ORDER

    v

JEANNE WOODFORD,

    Respondent.
_____/

    Petitioner Robert Williams was convicted by a jury in the Superior Court of the State of California in and for the County of Monterey of aggravated sexual assault of a child, continuous sexual abuse of a child under the age of fourteen, unlawful sexual intercourse with a minor, and two counts of forcible rape.  On March 29, 2000, Petitioner was sentenced to a term of sixty-seven years, eight months to life.

    On October 1, 2002, the California Court of Appeal partially reversed the judgment, striking the convictions as to both counts of aggravated sexual assault of a child, and affirming the remaining counts.  Doc # 12 at 2; Resp't Exh F.  On December 11, 2002, the California Supreme Court denied review.  Doc #12 at 2; Resp't Exh H.

On March 9, 2004, petitioner filed his original petition for writ of habeas corpus in this court, with an application that the petition be held in abeyance pending the resolution of a petition for habeas corpus filed in the California Supreme Court on March 8, 2004. Doc # 1. The court granted petitioner's application to hold his petition in abeyance. Doc # 3. On December 22, 2004, the California Supreme Court denied petitioner's state petition for habeas corpus. Resp't Exh J.

On January 13, 2005, petitioner filed his amended petition for writ of habeas corpus in this court. On May 9, 2005, the court issued an order to show cause, Doc # 10, to which respondent Jeanne Woodford answered, Doc # 11, whereupon petitioner filed a traverse. Doc # 23. Having carefully considered the parties' submissions and for the reasons stated herein, the court denies the petition.

I

The California Court of Appeal summarized the facts of the case as follows:

> Defendant met "Mary" in 1988 and began living with her a month later. At that time Mary had two children, including six-year-old "J," and a third child was born later that year. In 1990 defendant and Mary had another child.
>
> Defendant began molesting J when she was about seven years old. More than once a month he would enter her bedroom and place one or two fingers in her vagina, though she turned away from him and pretended to be asleep. When she was 10 years old, she went to another state to live with her father and stepmother. During that time her mother married defendant. In February 1994, when she was 11, J returned to live with her mother and defendant. Three or four months later, around her 12th birthday, he resumed the molestations, again inserting fingers into her vagina and touching her

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> breasts both under and over her pajamas.  This occurred at least once a week, notwithstanding her attempts to avoid him and pretend she was asleep.
>
> Eventually defendant began orally copulating J in addition to the other acts.  About four months after that, when she was 13 or 14, he started having sexual intercourse with her.  If she moved away or turned over he would force her back into the position he wanted or tell her to "stop it" or "move over."  He also continued touching her breasts, inserting his fingers into her vagina, and orally copulating her.  Defendant had sexual intercourse with J about every other day for about four months, and then once or twice a week.  [fn 1: J also testified that defendant had anal intercourse with her about once a month.  The jury, however, found defendant not guilty of the three charged counts of forcible sodomy.]  Defendant told her that the family needed him because he paid the bills; without him the family would be "split apart."  He controlled all of the family's money, refused to allow her to go places with friends unless he drove them, and insisted on selecting her clothes so that she would not "look like a slut."  He did not allow J to wear makeup until she was 15.  J also believed that he favored her over the other children, buying her candy and magazines, beginning when she was 13 or 14.  The abuse finally ended on January 18, 1999, when Mary caught defendant having sexual intercourse with J and ordered him to leave the house.
>
> Defendant was charged by amended information with one count of aggravated sexual assault of a child under 14 by forcible oral copulation, in violation of Penal Code section 269 [fn 2: All further statutory references are to Penal Code unless otherwise specified, references to rules are to the California Rules of Court.]; one count of aggravated sexual assault of a child under 14 by penetration with a foreign object (§ 269); one count of continuous sexual abuse of a child under 14 (§ 288.5); three counts of unlawful sexual intercourse with a minor (§ 261.5); two counts of forcible rape (§ 261, subd (a)(2)), and three counts of forcible sodomy (§ 286, subd (c)).  The jury found him guilty of all but the sodomy charges.  It also found true the allegation that as to count three (the continuous sexual abuse) defendant had engaged in "substantial sexual conduct" with a minor under 14, within the meaning of section 1203.066, subdivision (a)(8), thereby making him ineligible for probation.  After denying defendant's motion for a new trial, the court sentenced defendant to two consecutive prison terms of 15 years to life for counts one and two and 37 years, eight months for the remaining counts, for a total term of 67 years to life.

People v Williams # H021497, slip op at 1-3 (Resp't Ex F).

**II**

**A**

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of section 2254(d) when it has decided a petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. <u>Baker v Fleming</u>, 423 F3d 1085, 1092 (9th Cir 2005); <u>Lambert v Blodgett</u>, 393 F3d 943, 969 (9th Cir 2004).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court on a set of materially indistinguishable facts." <u>Williams v Taylor</u>, 529 US 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413.

A federal habeas court may not issue a writ where the court concludes "in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." Id at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id at 409.

The only definitive source of clearly established federal law under section 2254(d) is the holdings (as opposed to the dicta) of the Supreme Court at the time of the state court decision. Id at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need to be "reasonably" applied. Id.

B

Petitioner asserts that: (1) the trial court erred in excluding evidence which directly undermined the victim's credibility and supported the defense theory of the case; (2) the California statute and jury instruction used to define consent created an unconstitutional mandatory presumption as to an element of the offense of rape; and (3) cumulative error resulted from the combined impact of these errors. Doc #23 at 2.

\\
\\

5

1

The trial record includes a colloquy between the judge and counsel about Mary's mental health and suicide attempts in 1990 and 1992. Resp't Exh B at 503. Petitioner's counsel asserted that as a result of the 1992 suicide attempt, the "entire family was disbanded" and Jessica was sent to live with her biological father in Arizona for two years. Id at 507. Prior to trial, petitioner attempted to introduce the evidence of these events, arguing that this evidence showed that Jessica had a strong motive to lie to her mother about her relationship with her stepfather. Doc #23 at 1.

Petitioner contends that by excluding this evidence, the trial court prevented him from introducing evidence that was essential to his defense, thus violating his fifth amendment right to due process and a fair trial, as well as his sixth amendment right to present a defense. Doc #8 at 12. Petitioner further contends that this constitutional claim is not procedurally barred. Id at 17. Respondent argues that the claim is procedurally defaulted and in any event fails on its merits. Doc # 12 at 13.

The Court of Appeal rejected petitioner's argument that the trial court's refusal to admit evidence regarding the victim's mother's attempted suicide amounted to unconstitutional error:

> On appeal, defendant contends that the exclusion of the suicide attempts violated his right to "compulsory process and due process under the Fifth, Sixth, and Fourteenth Amendments." These arguments are presented for the first time on appeal and have been waived. [Citations omitted]. In any event, no constitutional violation occurred here. "'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. Courts retain a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice." [Citations omitted].  "A

6

defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." [Citations omitted]. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." [Citations omitted].

Likewise, due process was not implicated by the ruling. "The proposition that the Due Process Clause guarantees the right to introduce all relevant evidence is simply indefensible. As we have said: 'The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" [Citations omitted]. The opinion in Egelhoff recognizes that Federal Rule of Evidence 403, the federal rule substantially similar to section 352, was a "familiar and unquestionably constitutional" evidentiary rule which authorized the exclusion of relevant evidence." [Citations omitted]. The Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability-- even if the defendant would prefer to see that evidence admitted." [Citations omitted].

Defendant does not renew his argument with respect to the right to confrontation except belatedly in his reply brief. Furthermore, "[a]lthough the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.' [Citations omitted].

Thus, in the procedural circumstances presented here the decision whether to admit the proffered evidence was squarely within the discretion of the trial court under Evidence Code section 352. Under this provision a trial court has broad discretion to determine what evidence is relevant, and its ruling may not be overturned on appeal absent an abuse of that discretion-- that is, only if the trial court "exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." [Citations omitted].

We find no such abuse here. The trial court properly determined that the gap of several years between the second suicide attempt and J's description of the events to her mother was too large to be useful to the jury. Its conclusion that the evidence was not sufficiently probative on the issue of force did not exceed the bounds of reason. The court did not prevent defendant from vigorously cross-examining the victim and her mother regarding the facts or from attempting to prove

7

>       that the sexual relationship between defendant and J was
>       mutually consensual.  [fn 3: Defense counsel urged the
>       theory during closing argument that for J to have
>       admitted to her mother that she was having consensual
>       sex with defendant would have been the "ultimate
>       betrayal" for a daughter.  Also, J was cross-examined
>       about her fear of upsetting her mother.]  He was
>       prevented only from introducing evidence of remote
>       events that, in the court's view, had insufficient
>       probative value to the material issues before the jury.
>       On this record, we find no reason to disturb the trial
>       court's ruling.

Williams, slip op at 6-8.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgement.  Coleman v Thompson, 501 US 722, 729-30 (1991).  To be "adequate" the state procedural bar cited must be "clear, consistently applied, and well-established at the time of the petitioner's purported default."  Calderon v United States Dist Court(Bean), 96 F3d 1126, 1129 (9th Cir 1996) (internal quotations and citation omitted).

Petitioner argues that People v Yeoman, 31 Cal 4th 93 (2003) illustrates that the contemporaneous objection rule is not consistently applied by California courts, and therefore cannot be the basis of a procedural bar to petitioner's claims.  Doc #8 at 19.  Yeoman held that, "by analogy to the well-established principle that a reviewing court may consider a claim raising a pure question of law on undisputed facts," an appellate court could reach the merits of a constitutional claim raised for the first time on appeal where the claim applied the same legal standard and turned upon the same facts as a claim properly raised in the trial court.  31 Cal 4th at 117; see also People v Marchand, 98 Cal App

8

1  4th 1056 (2003)(though a defendant's failure to raise issues at the
2  trial court level results in waiver of these claims, an appellate
3  court nonetheless retains discretion to address constitutional
4  claims on the merits).
5            The Ninth Circuit has repeatedly held that California's
6  contemporaneous objection rule, which requires objection at time of
7  trial to preserve an issue for appeal, is an adequate bar to
8  federal habeas review.  See Davis v Woodford, 384 F3d 628, 653-54
9  (9th Cir 2004); Vansickel v White, 166 F3d 953, 957-58 (9th Cir
10 1999); Hines v Enomoto, 658 F2d 667, 673 (9th Cir 1981).  Further,
11 under California law, "as a general rule, 'the failure to object to
12 errors committed at trial relieves the reviewing court of the
13 obligation to consider those errors on appeal.' [Citations.]  This
14 applies to claims based on statutory violations, as well as claims
15 based on violations of fundamental rights. [Citations.]"  In re
16 Seaton, 34 Cal 4th, 193, 198 (2004); see also People v Scott, 9 Cal
17 4th 331, 351 (1994); People v Rudd, 63 Cal App 4th 620, 628 (1998).
18           Neither Yeoman nor Marchand indicates that the
19 contemporaneous objection rule is inconsistently applied by
20 California courts; rather, both cases illustrate that while the
21 rule uniformly bars parties from having the right to raise on
22 appeal an objection not properly preserved at the trial level,
23 appellate courts retain the discretion to address procedurally
24 waived constitutional claims on the merits.  That the courts retain
25 discretion does not render a state procedural bar "inconsistently
26 applied."  See Kibler v Walters, 220 F3d 1151, 1153-54 (9th Cir
27 2000) (state supreme court's exercise of judicial discretion in
28 applying state rule barring successive petitions did not render bar

1 inadequate for federal habeas corpus purposes).  Accordingly, the
2 court finds petitioner's argument to be without merit.
3     The Court of Appeal's invocation of the contemporaneous
4 objection rule precludes federal review of petitioner's fifth and
5 sixth amendment claims unless petitioner can demonstrate cause for
6 the default and actual prejudice as a result of the alleged
7 violation of federal law, or demonstrate that failure to consider
8 the claim will result in a fundamental miscarriage of justice.  See
9 Coleman v Thompson, 501 US 722, 750 (1991).  Petitioner makes no
10 such showing.
11     Notwithstanding the procedural bar, petitioner's claim
12 fails on the merits.  The Court of Appeal addressed the merits of
13 petitioner's claim.  See Williams, slip op at 7-8.  Petitioner's
14 defense was that his relationship with his stepdaughter was
15 consensual and less extensive than she claimed.  The appellate
16 court recognized that petitioner's trial counsel was given the
17 opportunity to bolster this defense by cross-examining Jessica
18 about her fear of upsetting her mother.  Further, the trial court
19 also permitted petitioner's counsel to argue to the jury that
20 Jessica, by admitting to the consensual nature of her relationship
21 with her stepfather, would have had to admit her betrayal to her
22 mother.  The trial court only prohibited petitioner from
23 introducing evidence of remote events that had, at best, a dubious
24 relevance to Jessica's credibility.
25     Accordingly, the Court of Appeal's determination that the
26 trial court did not abuse its discretion in excluding the evidence
27 of Mary's suicide attempts was not objectively unreasonable.  See
28 28 USC § 2254(d); Williams, 529 US at 409.  Petitioner's fifth and

10

sixth amendment claims are barred from federal habeas review. See Davis, 384 F3d at 653-53.

2

Petitioner next argues that California Penal Code section 261.6, by requiring a jury to presume the lack of consent element of rape when no evidence of "positive cooperation in act or attitude" is presented, creates an unconstitutional presumption in violation of his fifth amendment right to have every element of the case against him proven beyond a reasonable doubt. Doc # 8 at 26, 27. Section 261.6 defines consent, in relevant part thus:

> In prosecutions under Sections 261, 262, 286, 288a, or 289, in which consent is at issue, "consent" shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved.

The jury was instructed as to section 261.6's definition of consent pursuant to CALJIC No 1.23.1:

> In prosecutions under Penal Code Section 261, forcible rape, 269, aggravated assault of a child, and 286, forcible sodomy, the word consent means positive cooperation in an act or attitude as an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved.

Resp't Exh B at 1917.

Petitioner argues that this definition creates an unconstitutional presumption: "absent evidence of "positive cooperation," the jury must presume the lack of consent element of rape and find there was no consent." Doc #8 at 27. Petitioner contends that the instruction renders "irrelevant evidence that the alleged victim consented passively," and thus relieves the

11

government of its burden of proving consent beyond a reasonable doubt. Id at 28.

To obtain federal habeas relief for error in the jury charge, petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." Estelle v McGuire, 502 US 62, 72 (1991). The error may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.

Where a potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Boyde v California, 494 US 370, 380 (1990). But a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that a constitutional error has occurred. Calderon v Coleman, 525 US 141, 146 (1998). If constitutional error is found, the court must next determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. Id (citing Brecht v Abrahamson, 507 US 619, 637 (1993)).

The Court of Appeal rejected petitioner's argument that CALJIC no 1.23.1 unconstitutionally lessened the prosecution's burden of proof:

> The trial court instructed the jury on the concept of consent as follows: "In prosecutions under Penal Code Section 261, forcible rape, 269, aggravated assault of a child, and 286, forcible sodomy, the word [']consent['] means positive cooperation in an act or attitude as an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or the transaction involved." Defendant contends that this instruction created an unconstitutional presumption

12

> that the victim did not consent and relieved the prosecution of its burden to show that the sexual intercourse was against J's will. According to defendant, CALJIC No 1.23.1 "ignores the possibility that a woman may passively assent to sexual intercourse, even though she does not show positive cooperation."
>
> Defendant's argument cannot succeed. Section 261.6, on which CALJIC No 1.23.1 is based, defines consent as positive cooperation "in act or attitude," which includes passive conduct reflecting assent to the act. It was for the jury to decide whether J positively cooperated in attitude such that she could be found to have consented to defendant's sexual conduct. [fn 4: Actual consent must be distinguished from submission. For instance, a victim's decision to submit to an attacker's sexual demands out of fear of bodily injury is not consent because the decision is not freely and voluntarily made (§261.6). [Citations omitted.] There is no language in CALJIC No 1.23.1 that shifts the burden of proof to the defendant to prove that the victim did consent. Furthermore, the jury was not permitted to convict defendant of violating section 261 or 269 without finding beyond a reasonable doubt that the alleged acts were done "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the alleged victim or any other person." Consequently, there is no reasonable likelihood that defendant could have been convicted of counts one, two, seven and eight consistently with a jury finding that J willingly but passively engaged in the alleged acts. [Citations omitted.]

__Williams__, slip op at 11-12.

The Court of Appeal's rejection of petitioner's claim was neither contrary to clearly established Supreme Court precedent, nor involved an unreasonable determination of the facts. 28 USC § 2254(d). The state appellate court examined the record and reasonably determined that the definition in § 261.6 does not confine consent to active participation. Rather, by defining consent as "positive cooperation in act or attitude," section 261.6 encompasses passive consent because one who passively engages in a sexual act also positively cooperates "in attitude pursuant to an exercise of free will." The state appellate court reasonably

13

concluded, therefore, that CALJIC No 1.23.1 does not relieve the prosecution of its burden of proving the element of lack of consent beyond a reasonable doubt.

This determination was properly based on a "commonsense understanding of the instructions in the light of all that has taken place at the trial," and cannot be said to be "objectively unreasonable." Boyde, 494 US at 381; Williams, 529 US at 409. Petitioner is not entitled to federal habeas relief on this instructional error claim. See 28 USC § 2254(d); Williams, 529 US at 409.

### 3

Petitioner finally contends that even if none of the errors in his case individually warrants relief, the cumulative effect of these errors does. Doc #8 at 12. Respondent contends that a cumulative error claim is barred by Teague v Lane, 489 US 288 (1990). Doc # 12 at 24. Respondent alternatively argues that the cumulative effect of the errors did not prejudice petitioner. Id.

Having reviewed respondent's exhibits C, D, E, F, G, H, I, and J, it is not apparent to the court that Petitioner raised the cumulative error claim during the state court proceedings. Cumulative error must distinctly be raised as an issue at the state level for purposes of exhaustion prior to seeking federal habeas review. See Solis v Garcia, 219 F3d 922, 930 (9th Cir 2000) (holding that the district court properly declined to review petitioner's cumulative error claim, where the claim was not presented during the state court appeals). Respondent, however, represents that petitioner has "exhausted state remedies for his claims." Doc # 11 at 2. In either event, for the reasons that

14

1 follow, the court finds petitioner's cumulative error claim
2 meritless.

3        Teague precludes federal habeas relief if a petitioner's
4 claim rests on a "new rule" announced after a petitioner's case
5 became final.  Id at 310 (plurality op of O'Connor, J).  Respondent
6 argues that cumulative error constitutes a "new rule" in this case
7 because there is a split of authority on this issue.  Doc # 12 at
8 25.  Respondent acknowledges that while some circuits have declined
9 to adopt the concept of cumulative error, the Ninth Circuit
10 recognizes it.  Id.  That the Supreme Court has not yet addressed
11 the issue does not make the law of the Ninth Circuit any less
12 binding on this court.

13        The Ninth Circuit has consistently recognized that in some
14 cases, although no single trial error is sufficiently prejudicial to
15 warrant reversal, the cumulative effect of several errors may still
16 prejudice a defendant so much that his conviction must be
17 overturned.  See Alcala v Woodford, 334 F3d 862, (9th Cir 2003);
18 Thomas v Hubbard, 273 F3d 1164, 1179-81 (9th Cir 2002); Mancuso v
19 Olivarez, 292 F3d 939, 957 (9th Cir 2002); United States v
20 Frederick, 78 F3d 1370, 1381 (9th Cir 1996).  "However, where there
21 is no single constitutional error existing, nothing can accumulate
22 to the level of a constitutional violation."  Fuller v Roe, 182 F3d
23 699, 704 (9th Cir 1999); see also Manusco, 292 F3d at 957.  As there
24 is no single constitutional error in this case, there is nothing to
25 accumulate into a constitutional violation.  Accordingly, Petitioner
26 is not entitled to federal habeas relief on the grounds of
27 cumulative error.  See Davis, 384 F3d at 654.
28 \\

**United States District Court**
For the Northern District of California

         For all the reasons stated herein, the petition is DENIED.
The clerk is directed to close the file and terminate all pending
motions.

         IT IS SO ORDERED.

                                     _____
                                     **VAUGHN R WALKER**
                                     **United States District Chief Judge**